**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE:** | **) BANKRUPTCY CASE NO.** 25-22342-JAD |
| | ) |
| Michael J. Raczkowski, | **) CHAPTER** 11 (Subchapter V) |
| | ) |
| **DEBTOR.** | **) DOCUMENT NO.** |

**SMALL BUSINESS DEBTOR'S AMENDED CHAPTER 11 SUBCHAPTER V PLAN**
**DATED DECEMBER 1, 2025**

This Plan of Reorganization dated as of **DECEMBER 1, 2025** (the "Plan") is presented to you to inform you of the proposed Plan for restructuring the debt of **MICHAEL J. RACZKOWSKI** and to seek your vote to accept the Plan.

You are encouraged to carefully review the Plan in full, including all exhibits, schedules, and attachments, before deciding how to vote on the Plan. A list of definitions appears at the end of this document to assist you in your review.

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO CONFIRMATION OF THE PLAN. IF YOU WISH TO OBJECT TO CONFIRMATION OF THE PLAN, YOU MUST DO SO BY [●].**

**YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY [●]. THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS:**

CALAIARO VALENCIK
ATTN: David Z. Valencik, Esq.
555 Grant Street, Suite 300
Pittsburgh, PA 15219

**A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR [●] BEFORE CHIEF JUDGE JEFFERY A. DELLER IN COURTROOM A, 54TH FLOOR, U.S. STEEL TOWER, 600 GRANT STREET, PITTSBURGH, PA 15219.**

**YOUR RIGHTS MAY BE AFFECTED BY THIS PLAN. YOU SHOULD CONSIDER DISCUSSING THIS DOCUMENT WITH AN ATTORNEY.**

| | |
|---|---|
| **DATED:** December 1, 2025 | **CONTACT INFORMATION FOR DEBTOR'S ATTORNEY:** |
| | |
| | **David Z. Valencik, Esq.** |
| | **CALAIARO VALENCIK** |
| | **555 Grant Street, Suite 300** |
| | **Pittsburgh, PA 15219** |
| | **PHONE:      (412) 232-0930** |
| | **EMAIL:       dvalencik@c-vlaw.com** |

## <u>SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS</u>

This concise summary of the Plan, consistent with *Local Rule 3016-2*, describes with particularity the treatment of each class of Creditors and the source of funding for the Plan.

The Plan proposes to pay the Debtor's creditors from, for example, cash flow from operations, sale of assets, infusion of capital, loan proceeds: The Plan will be implemented through the Debtor's disposable income.

The Plan provides for the following classes of claims and interests for priority claims, secured claims, general unsecured claims, and equity interests:

| Class # | Class Name | Impaired/Unimpaired | Section for Treatment |
|---|---|---|---|
| N/A | Administrative Claims | **UNIMPAIRED** | Section 2.1.1 |
| N/A | Priority Tax Claims | **UNIMPAIRED** | Section 2.1.2 |
| 1 | PNC Bank | **IMPAIRED** | Section 2.2.1(A) |
| 2 | AmeriCredit Financial Services Inc. dba GM Financial | **IMPAIRED** | Section 2.2.1(B) |
| 3 | Truist Bank | **IMPAIRED** | Section 2.2.1 (C) |
| 4 | Synchrony Bank | **IMPAIRED** | Section 2.2.1(D) |
| 5 | General Unsecured Claims | **IMPAIRED** | Section 2.2.3 |

The Plan proposes to pay administrative and priority claims in full unless otherwise agreed. The Debtor estimates approximately **2.27%** will be paid on account of general unsecured claims pursuant to the Plan. The percentage is subject to change based on the allowance of claims, litigation proceeds, or the proceeds from any sales that may occur.

The specific treatment of the classes of claims and interest are set forth in Article 2 of the Plan.

Only holders of Allowed Claims in a class identified as impaired may vote on whether to accept or reject the Plan. A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan. Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan. A class that is not impaired is deemed to accept the Plan.

# ARTICLE 1
# DISCLOSURES REGARDING THE DEBTOR(S) AND THE BANKRUPTCY CASE

## 1.1    Nature of the Debtor's Business

The Debtor is the owner of a chiropractic office in Belle Vernon, PA.

## 1.2    History of Debtor's Business Operations

The Debtor is a licensed chiropractor. The Debtor previously operated a wellness company but has ceased to operate. The Debtor is currently operating a chiropractic business.

## 1.3    Prepetition Legal Structure and Ownership

The Debtor is an individual resident of the Commonwealth of Pennsylvania. There is no legal structure or ownership.

## 1.4    Debtor's Assets

| Category of Asset | Reorganization Value | Liquidation Value | Value of Liens | Value of Estate's Interest |
|---|---|---|---|---|
| 2024 Chevrolet Silverado 3500 | $50,000.00 | $37,500.00 | $51,869.53 | $0.00 |
| Can Am Defender SXS | $11,000.00 | $8,250.00 | $10,975.00 | $0.00 |
| 2021 Super Air Nautique | $120,000.00 | $90,000.00 | $119,001.53 | $0.00 |
| 2005 Trailer Rite | $100.00 | $75.00 | $0.00 | $0.00 |
| 2021 Boat Mate Trailer | $5,000.00 | $3,750.00 | $0.00 | $0.00 |
| 2015 Cover Wagon Trailor | $500.00 | $375.00 | $0.00 | $0.00 |
| 2 Couches | $250.00 | $75.00 | $0.00 | $0.00 |
| 4 Kitchen Stools | $100.00 | $30.00 | $0.00 | $0.00 |
| 1 Purple Queen Mattress | $300.00 | $90.00 | $0.00 | $0.00 |
| 1 Queen Memory Foam Mattress | $50.00 | $15.00 | $0.00 | $0.00 |
| 1 Twin Memory Foam Mattress | $50.00 | $15.00 | $0.00 | $0.00 |
| 1 Desk | $20.00 | $6.00 | $0.00 | $0.00 |
| 2 Dressers | $50.00 | $15.00 | $0.00 | $0.00 |
| 1 Air Fryer | $40.00 | $12.00 | $0.00 | $0.00 |
| 1 Grill | $100.00 | $30.00 | $0.00 | $0.00 |
| 1 Refrigerator | $200.00 | $60.00 | $0.00 | $0.00 |
| 1 Stove | $200.00 | $60.00 | $0.00 | $0.00 |
| Microwave | $50.00 | $15.00 | $0.00 | $0.00 |
| Home Decor | $100.00 | $30.00 | $0.00 | $0.00 |
| Coffee Maker | $20.00 | $6.00 | $0.00 | $0.00 |
| Dishwasher | $50.00 | $15.00 | $0.00 | $0.00 |
| Kitchen Knives and Utensils | $100.00 | $30.00 | $0.00 | $0.00 |
| Deep Freezer | $50.00 | $15.00 | $0.00 | $0.00 |
| Pots and Pans | $50.00 | $15.00 | $0.00 | $0.00 |
| Hot Tub | $1,500.00 | $450.00 | $0.00 | $0.00 |
| Outdoor Furniture (Couch) | $250.00 | $75.00 | $0.00 | $0.00 |
| 3 Flatscreen TVs | $300.00 | $90.00 | $0.00 | $0.00 |

| | | | |
|---|---|---|---|
| 4 Bicycles | $350.00 | $105.00 | $0.00 | $0.00 |
| Boat Accessories (Life Jackets, Ropes, Surfboard) | $300.00 | $90.00 | $0.00 | $0.00 |
| 2 Handguns | $250.00 | $75.00 | $0.00 | $0.00 |
| Gym Clothes | $20.00 | $6.00 | $0.00 | $0.00 |
| Gym Shoes | $30.00 | $9.00 | $0.00 | $0.00 |
| 1 Pair of Dress Shoes | $30.00 | $9.00 | $0.00 | $0.00 |
| 2 Dress Outfits | $60.00 | $18.00 | $0.00 | $0.00 |
| 2 Dogs, 1 Cat | $0.00 | $0.00 | $0.00 | $0.00 |
| Misc. Tools | $100.00 | $30.00 | $0.00 | $0.00 |
| 1 Drill | $20.00 | $6.00 | $0.00 | $0.00 |
| Holiday Decor | $300.00 | $90.00 | $0.00 | $0.00 |
| Leaf Blower | $50.00 | $15.00 | $0.00 | $0.00 |
| Weed Eater | $50.00 | $15.00 | $0.00 | $0.00 |
| CFS Bank Checking Account (8067) | $1,189.43 | $1,189.43 | $0.00 | $0.00 |
| Chirocorrection LLC | $100.00 | $0.00 | $0.00 | $0.00 |
| Penn Wellness LLC | $0.00 | $0.00 | $0.00 | $0.00 |
| Chiropractic License | $1.00 | $0.00 | $0.00 | $0.00 |

## 1.5   Assumptions Made Concerning Asset's Value

The following assumptions are made for the Liquidation Value of the Assets:

1.    The Estate would recover 100% of the Debtor's interest in all Cash Accounts, including but not limited to, petty cash, bank accounts, and retirement accounts.

2.    The Estate would recover at least 75% of all Vehicles, Boats, and related property and accessories.

3.    The Estate would recover at least 30% from the liquidation of all Personal Property, including but not limited to, household furniture, electronics, jewelry, and sports/hobby equipment.

The Debtor reasserts that these are assumptions made in a hypothetical chapter 7 case. In a hypothetical chapter 7, these assets may be liquidated for less than what is listed. Further, some of the assets, including but not limited to, vehicles, furniture, personal property, and tools, may not provide any value due to their age, condition, and/or lack of usefulness outside of the industry.

## 1.6     Debtor's Liabilities

The table below discloses the Debtor's liabilities by aggregating the total amount of claims in each class under the Plan.  For a breakdown of specific claim amounts *see* Article 2, Sections 2.1 and 2.2.

| Class # | Description of Liability by Class | Total Amount of Claims in the Class | Disputed (D) Unliquidated (U) Contingent (C) |
|---------|-----------------------------------|-------------------------------------|----------------------------------------------|
| N/A | Administrative Claims | $35,000.00 | |
| N/A | Priority Tax Claims | $0.00 | |
| 1 | PNC Bank, N.A. | $200,400.74 | |
| 2 | AmeriCredit Financial Services, Inc. | $51,869.53 | D |
| 3 | Truist Bank | $119,001.53 | D |
| 4 | Synchrony Bank | $11,902.81 | D |
| 5 | General Unsecured Claims | $658,343.90 | D |
| | **TOTAL:** | $1,076,518.51 | |

## 1.7     Current and Historical Financial Conditions

The Debtor's relevant financial data, including the Debtor's current and 12-month historical financial performance, is summarized, below.  Consistent with current practice and so there is no ambiguity as to duration of the historical performance, a 12-month history should be included.

Information concerning the Debtor's postpetition financial performance is found in the monthly operating reports filed of public record by the Debtor with the Bankruptcy Court.

The Debtor's financial projections providing information on the Debtor's ability to fund its obligations under this Plan are found in Article 3 and Schedules 3.1 and 3.2 of this Plan

## 1.8     Events Leading to the Filing of the Bankruptcy Case

The Debtor was being sued by various entities to collect for unpaid business debt related to the Debtor's previous wellness company.

## 1.9     Significant Events During Bankruptcy Case

### 1.9.1.  Any asset sales outside the ordinary course of business, debtor-in-possession financing, or cash collateral orders:

There are no current sales of property. However, the Plan does propose the sale of certain property.

### 1.9.2.  The identity of professionals approved by the Bankruptcy Court:

     **a.**    **Debtor's Counsel –** the Debtor retained, and the Court approved, the employment and retention of Calaiaro Valencik to represent the Debtor during its Chapter 11 proceedings.

**1.9.3. Any adversary proceedings that have been filed or other significant litigation that has occurred (including contested claim disallowance proceedings), and any other significant legal or administrative proceedings that are pending or have been pending during the case in a forum other than the Bankruptcy Court:**    N/A

**1.9.4. Any steps taken to improve operations and profitability of the Debtor:**

The Debtor has attempted to reduce his expenses and continued to work to increase his income. The Debtor is continuing to operate his business to help improve feasibility.

**1.9.5. Other events as appropriate:**    N/A

## 1.10  Projected Avoidance Actions

The Debtor has not yet completed its investigation regarding transactions that may be subject to avoidance.  For example, if you received a payment or other transfer of property within 90 days of bankruptcy (or if you are an Insider, within 365 days of bankruptcy), the Debtor may seek to avoid such transfer.

The Debtor estimates approximately **$TO BE DETERMINED** will be recovered from the Avoidance Actions.  The results of litigation, however, cannot be predicted with certainty and it is possible that other causes of action may be identified.   The Debtor reserves the right to supplement or modify this section upon completion of its investigation.  All Chapter 5 Avoidance Actions are required to be filed on or before forty-five (45) days following entry of the Post-Confirmation Order unless otherwise modified or extended by Court Order.

## 1.11  Other Potential Litigation

### A.  Determinations of Secured Status

The Debtor will initiate a contested matter or adversary proceeding to determine the secured status of various liens that have been asserted on the Debtor's assets.

### B.  Objections to Claims

This Plan contemplates the Objections to Claims on various theories, including but not limited to disputed and unfiled, not entitled to priority status, or general defenses to the claim.

To the extent that there is no resolution to these matters prior to confirmation of the Plan, the Debtor will file the appropriate pleadings within the time frame provided for by the Plan and Court Orders.

### C.    Retention of Professionals

The Debtor may determine that it is necessary to hire professionals, including but not limited to, an accountant, financial advisor, or special counsel, as part of the Pre- and/or Post-Confirmation business operations. To the extent necessary, the Debtor will file appropriate pleadings related to the retentions if such retentions need to be approved.

### D.    Litigation to Enforce Plan and/or Orders of Court

The Debtor reserves the right to initiate any litigation to enforce the Plan, or any Order related to or incorporated in the Plan.

### E.    General Reservation of Rights

Other than what is provided, as of the date of this Plan, the Debtor does not anticipate bringing any other potential litigation. In the event that the Debtors determine that such litigation is necessary, the Debtors will file any appropriate action pursuant to the deadlines set forth in the Post-Confirmation Order. The Debtors reserve all rights to amend, supplement, and or modify this section.

## ARTICLE 2
## THE PLAN

### 2.1    Treatment of Unclassified Claims

#### 2.1.1  Administrative Claims

Administrative Claims shall consist of claims entitled to priority under Section 503 of the Bankruptcy Code. Administrative Claims include, but shall not limited to:

(a)    Court costs and fees.
(b)    Costs and Fees owed to the Attorneys of the Debtor, Calaiaro Valencik.
(c)    Costs and Fees owed to Crystal H. Thornton-Illar, Subchapter V Trustee.
(d)    Costs and Fees owed to Accountants to the Debtor.
(e)    Any professional fees, subject to the approval of the Bankruptcy Court under Section 330(a)(1) of the Bankruptcy Code and Bankruptcy Rule 2016(a), and only to the extent the professionals preserved the Estate.
(f)    Expenses arising in the ordinary course of business after the Petition Date.
(g)    Tax claims subject to administrative priority status, including but not limited to post-petition taxes.
(h)    The value of goods received in the ordinary course of business within 20 days before the Petition Date; and
(i)    Other claims asserting Administrative Claim status, subject to review by the Debtor and the Subchapter V Trustee

Each Allowed Administrative Claim shall be paid as follows: (a) in full on the Effective Date, or (b) in such amounts and on such other terms as may be agreed on between the holder of such Allowed Administrative Claim and the Debtor, or (c) as ordered by the Court.

The following chart lists the Debtor's estimated Administrative Claims, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses arising in the ordinary course of business after the Petition Date<br><br>**Debtor does not anticipate any claims in this category** | $0.00 | Payment through the Plan as follows:<br><br>This claim will either (i) be paid in full on or before the Effective Date of the Plan, (ii) over sixty (60) months in equal monthly payments; or (iii) in such amounts and on such other terms agreed on between the Debtor and this Claim holder. |
| Administrative Tax Claims<br><br>**Debtor does not anticipate any claims in this category** | $0.00 | To the extent such amount is entitled to such priority and classification, payment through the Plan as follows: This claim will either (i) be paid in full on or before the Effective Date of the Plan **or** (ii) in such amounts and on such other terms agreed on between the Debtor and this Claim holder. |
| The value of goods received in the ordinary course of business within 20 days before the Petition Date<br><br>**Debtor does not anticipate any claims in this category.** | $0.00 | Payment through the Plan as follows:<br><br>This claim will either (i) be paid in full on or before the Effective Date of the Plan, (ii) over sixty (60) months in equal monthly payments; or (iii) in such amounts and on such other terms agreed on between the Debtor and this Claim holder. |

| | | |
|---|---|---|
| Professional fees and costs, as approved by the Bankruptcy Court<br><br>Calaiaro Valencik<br>**Role:** Bankruptcy Counsel<br><br>Claim estimated as of December 2025. Final claim subject to allowance process. | $25,000.00 | Upon application under §330 and after Bankruptcy Court approval, this claim will either (i) be paid in full on or before the Effective Date of the Plan **or** (ii) in such amounts and on such other terms agreed on between the Debtor and this Claim holder.<br><br>Counsel further reserves the right to be paid its claim under 506(c) under the Bankruptcy Code from the proceeds of any sale. |
| Costs and Fees owed to Subchapter V Trustee<br><br>Trustee: Crystal H. Thornton-Illar<br><br>Claim estimated as of December 2025. Final claim subject to allowance process. | $10,000.00 | Upon application under §330 and after Bankruptcy Court approval, this claim will either (i) be paid in full on or before the Effective Date of the Plan **or** (ii) in such amounts and on such other terms agreed on between the Debtor and this Claim holder. |
| Clerk's Office fees | $0.00 | Paid in full on the Effective Date. |
| Other Administrative Expenses | $0.00 | To the extent the amount remains unpaid as of the filing of this Plan, paid immediately prior to Confirmation of the Plan through available funds. |
| **TOTAL** | $35,000.00 | |

### 2.1.2  Priority Tax Claims

Priority Tax Claims are unsecured income, employment, and other taxes described by §507(a)(8) of the Code.  Unless the holder of such a §507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the Petition Date.

**THE DEBTOR DOES NOT ANTICIPATE ANY PRIORITY TAX CLAIMS.**

To the extent that there is determined to be an Allowed Priority Tax Claim(s), the Priority Tax Claim(s) asserted against the Debtor will be paid (i) in full on or before the

Plan Effective Date, (ii) in regular monthly payments over sixty (60) months with the requisite statutory interest, or (iii) as the Debtor and claim holder otherwise agree.

To the extent that there is determined to be an Allowed Priority Tax Claim(s), the only Event of Default for Priority Tax Claim(s) is lack of payment consistent with the Plan. All creditors in this Class must give notice to the Debtor and its counsel by written notice specifying the alleged default and the action needed to cure the default. The Debtor shall have thirty (30) days to cure any default after receipt of that notice. No creditor may enforce any right or enforce any lien until this notice and opportunity to cure has been given. All notices of default must be mailed to the Debtor **AND** a copy of that notice shall be mailed to David Z. Valencik at 555 Grant Street, Suite 300, Pittsburgh, Pennsylvania 15222, with courtesy copies made to David Z. Valencik at **dvalencik@c-vlaw.com**. All notices must be sent by certified mail, return receipt requested to be effective. The terms of these notice rights must be strictly enforced as a condition precedent to the exercise of any rights under this Plan.

In the event that the default is not cured within the period allowed, the creditor will be allowed to take action to enforce their rights, subject to applicable laws and procedures.

## 2.2    Classification and Treatment of Claims and Equity Interests

### 2.2.1.  Secured Claims

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under §506 of the Code.  If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim. In addition, certain claims secured only by the debtor's principal residence, may require different treatment pursuant to §1190(3) of the Code as set forth below, if applicable.

The following table lists the classes of the Debtor's Secured Claims and their proposed treatment under the Plan:

| Class # | Description | Disputed? (Y/N) | Impaired / Unimpaired | Treatment |
|---------|-------------|-----------------|----------------------|-----------|

| | | | | |
|---|---|---|---|---|
| 1 | **Creditor Name:** PNC Bank, N.A. **POC 8**<br><br>**Collateral Description:** Mortgage on 926 Ada Street, Bell Vernon, PA 15012<br><br>**Secured Amt.:** $200,400.74<br><br>**Priority of Lien:** First Lien Priority on Collateral | N | Impaired | See Section 2.2.1(A) |
| 2 | **Creditor Name:** AmeriCredit Financial Services, Inc. dba GM Financial **POC 2**<br><br>**Collateral Description:** 2024 Chevrolet Silverado 3500<br><br>**Secured Amt.:** $51,869.53<br><br>**Priority of Lien:** First Lien Priority on Collateral | Disputed as to secured status only | Impaired | See 2.2.1(B) |
| 3 | **Creditor Name:** Truist Bank **POC 1**<br><br>**Collateral Description:** 2021 Super Air Nautique Boat<br><br>**Secured Amt.:** $119,001.53<br><br>**Priority of Lien:** First Lien Priority on Collateral | Disputed as to secured status only | Impaired | See 2.2.1(C) |

| 4 | **Creditor Name:** Synchrony Bank<br>**POC 10**<br><br>**Collateral Description:** 2023 Can AM Model 6LPA<br><br>**Secured Amt.:** $11,902.81<br><br>**Priority of Lien:** First Lien Priority on Collateral | Disputed as to secured status only | Impaired | <u>See</u> 2.2.1(D) |

      **A.    Class 1 – PNC Bank, National Association.** The Allowed Secured Claim of PNC Bank, N.A. shall be classified as Class 1. PNC Bank, N.A. shall be the only Claim in this Class.

      1)    ***Claim & Collateral.*** PNC Bank, N.A. has a Secured Claim connected to a mortgager on 926 Ada Street, Belle Vernon, PA. PNC Bank filed Proof of Claim 8 in the amount of $200,400.74, with prepetition arrears in the amount of $4,842.80.

      2)    ***Treatment.*** This Class will be modified only to the extent necessary to provide a cure of the claimed arrears. The Debtor will continue to make contractual payments consistent with the loan documents. The terms of payment will not be changed, including but not limited to, the due dates and the applicability of any grace periods. The claimed arrears will be paid in equal monthly payments in the amount of 1/60th of the claimed arrears. If the arrears are submitted to this Creditor by the 25th day of each month, that payment shall be considered timely received.

      3)    ***Retention of Liens.*** Creditor shall retain its liens on the Debtor's property to the same extent, and in the same position until Creditor's claim is paid in full.

      4)    ***Satisfaction Upon Completion.*** All liens held by Creditor will be retained until the completion of payments. Upon the completion of the payments contemplated under this Plan, Creditor agrees to satisfy all mortgages, security agreements and other filings asserting a secured claim against the Debtor and any guarantor and release all liens within the time frames provided by applicable law.

      5)    ***Events of Default.*** Any one or more of the following events shall constitute an "Event of Default":

        i.    The failure of the Debtor to tender payment to this Class as agreed and in accordance with the Plan after any applicable cure period.

        ii.    The conversion or dismissal of the Debtor's Chapter 11 case, or application or motion by or against the Debtor for such conversion or

dismissal, unless the members of this Class consents to such dismissal or conversion.

iii.   The failure of the Debtor to observe or perform any other term, condition, covenant, or provision under the loan documents with Creditor after any applicable cure period, except to the extent modified by the Plan.

6)   ***Remedies Upon Default.*** Upon the occurrence of any Event of Default arising from a failure to comply with the payment requirements set forth herein, the Debtor shall have thirty (30) days to cure any default after receipt of that notice. Creditor is required to provide written notice to the Debtor and its counsel of such Event of Default or the Debtor's failure to cure any Event of Default. In the event that the default is not cured within the time period allowed, Creditor will be allowed to take any action to enforce their rights, subject to applicable laws and procedures, including but not limited to, requesting relief from the automatic stay to proceed with a repossession or any such other action as Creditor deems necessary under Pennsylvania law. Creditor may not enforce any right until this notice and opportunity to cure has been given. All notices of default must be mailed to the Debtor at its last known address <u>AND</u> a copy of that notice shall be mailed to David Z. Valencik at 555 Grant Street, Suite 300, Pittsburgh, Pennsylvania 15219, with courtesy copies made to David Z. Valencik at <u>dvalencik@c-vlaw.com</u>. All notices must be sent by certified mail, return receipt requested to be effective. The terms of these notice rights must be strictly enforced as a condition precedent to the exercise of any rights under this Plan*.*

**B.   Class 2 – Americredit Financial Services, Inc. dba GM Financial.**   The Allowed Secured Claim of Americredit Financial Services, Inc. dba GM Financial shall be classified as Class 2. GM Financial shall be the only Claim in this Class.

1)   ***Claim & Collateral.***   GM Financial has a Secured Claim connected to a 2024 Chevrolet Silverado 3500. GM Financial filed Proof of Claim 2 asserting a claim in the amount of $51,869.53.

2)   ***Treatment.*** Upon Confirmation of the Plan, GM Financial will realize the indubitable equivalent of its Allowed Secured Claim. The Allowed Secured Claim will be equal to the Claim filed. The Allowed Secured Claim will be modified into a Modified Secured Claim for the unpaid principal, interest, and other amounts due, less any adequate protection payments, as of the Effective Date. This amount shall be the "Modified Secured Claim." The Modified Secured Claim shall be reamortized over five (5) years at the contractual interest rate, 7.00% fixed interest. All pre-confirmation defaults shall be waived upon Confirmation of the Plan. Any adequate protection payments made to Northwest Bank prior to Confirmation of this Plan will reduce the Modified Secured Claim. Northwest Bank's lien shall be retained as an in-rem lien as modified until payments under the Plan are completed. Upon Confirmation of the Plan, the Modified Secured Claim shall be an in-rem liability only. Payments to this Class will be made by the Debtor's business.

3)      ***Retention of Liens.*** Creditor shall retain its liens on the Debtor's property to the same extent, and in the same position until the Collateral is surrendered.

4)      ***Satisfaction Upon Completion.*** All liens held by Creditor will be retained until the collateral is surrendered. Upon the surrender, contemplated under this Plan, Creditor agrees to satisfy all mortgages, security agreements and other filings asserting a secured claim against the Debtor and any guarantor and release all liens within the time frames provided by applicable law.

5)      ***Events of Default.*** Any one or more of the following events shall constitute an "Event of Default":

i.   The failure of the Debtor to surrender the Collateral to this Class as agreed and in accordance with the Plan.

ii.   The conversion or dismissal of the Debtor's Chapter 11 case, or application or motion by or against the Debtor for such conversion or dismissal, unless the members of this Class consents to such dismissal or conversion.

6)      ***Remedies Upon Default.*** Upon the occurrence of any Event of Default arising from a failure to comply with the payment requirements set forth herein, the Debtor shall have thirty (30) days to cure any default after receipt of that notice. Creditor is required to provide written notice to the Debtor and its counsel of such Event of Default or the Debtor's failure to cure any Event of Default. In the event that the default is not cured within the time period allowed, Creditor will be allowed to take any action to enforce their rights, subject to applicable laws and procedures, including but not limited to, requesting relief from the automatic stay to proceed with a repossession or any such other action as Creditor deems necessary under Pennsylvania law. Creditor may not enforce any right until this notice and opportunity to cure has been given. All notices of default must be mailed to the Debtor at its last known address <u>AND</u> a copy of that notice shall be mailed to David Z. Valencik at 555 Grant Street, Suite 300, Pittsburgh, Pennsylvania 15219, with courtesy copies made to David Z. Valencik at **dvalencik@c-vlaw.com**. All notices must be sent by certified mail, return receipt requested to be effective. The terms of these notice rights must be strictly enforced as a condition precedent to the exercise of any rights under this Plan.

**C.      Class 3 – Truist Bank.** The Allowed Secured Claim of Truist Bank shall be classified as Class 3. Truist Bank shall be the only Claim in this Class.

1)      ***Claim & Collateral.*** Truist Bank has a Secured Claim connected to a 2021 Super Air Nautique Boat. Truist Bank filed Proof of Claim 1 asserting a claim in the amount of $119,001.53.

2)      ***Treatment.*** This Class will be paid through the sale of property. Any sale of property shall be used to pay claims in the following order of distribution: (i) liens encumbering the property, if any; (ii) ordinary and necessary operating expenses; (iii) Administrative Claims; (iv) Priority Claims, if any; (v) General Unsecured Claims. To the

extent that the Debtor exercises its right to conduct a sale, it shall receive all benefits conferred by Section 1146 of the Bankruptcy Code.

3)    ***Retention of Liens.*** Creditor shall retain its liens on the Debtor's property to the same extent, and in the same position until the Collateral is sold.

4)    ***Satisfaction Upon Completion.*** All liens held by Creditor will be retained until the collateral is surrendered. Upon the surrender, contemplated under this Plan, Creditor agrees to satisfy all mortgages, security agreements and other filings asserting a secured claim against the Debtor and any guarantor and release all liens within the time frames provided by applicable law.

5)    ***Events of Default.*** Any one or more of the following events shall constitute an "Event of Default":

i.    The failure of the Debtor to sell the Collateral to this Class as agreed and in accordance with the Plan.

ii.    The conversion or dismissal of the Debtor's Chapter 11 case, or application or motion by or against the Debtor for such conversion or dismissal, unless the members of this Class consents to such dismissal or conversion.

6)    ***Remedies Upon Default.*** Upon the occurrence of any Event of Default arising from a failure to comply with the payment requirements set forth herein, the Debtor shall have thirty (30) days to cure any default after receipt of that notice. Creditor is required to provide written notice to the Debtor and its counsel of such Event of Default or the Debtor's failure to cure any Event of Default. In the event that the default is not cured within the time period allowed, Creditor will be allowed to take any action to enforce their rights, subject to applicable laws and procedures, including but not limited to, requesting relief from the automatic stay to proceed with a repossession or any such other action as Creditor deems necessary under Pennsylvania law. Creditor may not enforce any right until this notice and opportunity to cure has been given. All notices of default must be mailed to the Debtor at its last known address <u>AND</u> a copy of that notice shall be mailed to David Z. Valencik at 555 Grant Street, Suite 300, Pittsburgh, Pennsylvania 15219, with courtesy copies made to David Z. Valencik at **dvalencik@c-vlaw.com**. All notices must be sent by certified mail, return receipt requested to be effective. The terms of these notice rights must be strictly enforced as a condition precedent to the exercise of any rights under this Plan.

**D.    Class 4 – Synchrony Bank**. The Allowed Secured Claim of Synchrony Bank shall be classified as Class 4. Synchrony Bank shall be the only Claim in this Class.

1)    ***Claim & Collateral.*** Synchrony Bank has a Secured Claim connected to a 2023 Can Am 6LPA. Synchrony Bank filed Proof of Claim 10 asserting a claim in the amount of $11,902.81.

2)      ***Treatment.*** Upon Confirmation of the Plan, Synchrony Bank will realize the indubitable equivalent of its Allowed Secured Claim. The Allowed Secured Claim will be equal to the Claim filed. The Allowed Secured Claim will be modified into a Modified Secured Claim for the unpaid principal, interest, and other amounts due, less any adequate protection payments, as of the Effective Date. This amount shall be the "Modified Secured Claim." The Modified Secured Claim shall be reamortized over five (5) years at the contractual interest rate, 7.00% fixed interest. All pre-confirmation defaults shall be waived upon Confirmation of the Plan. Any adequate protection payments made to Northwest Bank prior to Confirmation of this Plan will reduce the Modified Secured Claim. Northwest Bank's lien shall be retained as an in-rem lien as modified until payments under the Plan are completed. Upon Confirmation of the Plan, the Modified Secured Claim shall be an in-rem liability only. Payments to this Class will be made by the Debtor's business.

3)      ***Retention of Liens.*** Creditor shall retain its liens on the Debtor's property to the same extent, and in the same position until the Collateral is surrendered.

4)      ***Satisfaction Upon Completion.*** All liens held by Creditor will be retained until the collateral is surrendered. Upon the surrender, contemplated under this Plan, Creditor agrees to satisfy all mortgages, security agreements and other filings asserting a secured claim against the Debtor and any guarantor and release all liens within the time frames provided by applicable law.

5)      ***Events of Default.*** Any one or more of the following events shall constitute an "Event of Default":

   i.   The failure of the Debtor to surrender the Collateral to this Class as agreed and in accordance with the Plan.

   ii.  The conversion or dismissal of the Debtor's Chapter 11 case, or application or motion by or against the Debtor for such conversion or dismissal, unless the members of this Class consents to such dismissal or conversion.

6)      ***Remedies Upon Default.*** Upon the occurrence of any Event of Default arising from a failure to comply with the payment requirements set forth herein, the Debtor shall have thirty (30) days to cure any default after receipt of that notice. Creditor is required to provide written notice to the Debtor and its counsel of such Event of Default or the Debtor's failure to cure any Event of Default. In the event that the default is not cured within the time period allowed, Creditor will be allowed to take any action to enforce their rights, subject to applicable laws and procedures, including but not limited to, requesting relief from the automatic stay to proceed with a repossession or any such other action as Creditor deems necessary under Pennsylvania law. Creditor may not enforce any right until this notice and opportunity to cure has been given. All notices of default must be mailed to the Debtor at its last known address <u>AND</u> a copy of that notice shall be mailed to David Z. Valencik at 555 Grant Street, Suite 300, Pittsburgh, Pennsylvania 15219, with courtesy copies made to David Z. Valencik at <u>dvalencik@c-vlaw.com</u>. All notices must be sent by certified mail, return receipt requested to be

effective. The terms of these notice rights must be strictly enforced as a condition precedent to the exercise of any rights under this Plan.

### 2.2.2.  Priority Unsecured Claims

**RESERVED/INTENTIONALLY OMITTED**

**THE DEBTOR DOES NOT ANTICIPATE ANY CLAIMS ENTITLED TO PRIORITY STATUS UNDER §§ 507(a)(1), (4), (5), (6) OR (7) OF THE CODE.**

### 2.2.3.  General Unsecured Claims

General unsecured Claims are not secured by property of the estate and are not entitled to priority under §507(a) of the Code.

Insert description of §1122(b) convenience class if applicable:    **NONE**

The following table lists the classes of the Debtor's General unsecured Claims and their proposed treatment under the Plan:

| Class # | Description | Impaired / Unimpaired | Treatment |
|---------|-------------|-----------------------|-----------|
| 5 | General Unsecured Creditors | Impaired | See 2.2.3(A) |

**(A)** **General Unsecured Claims**. General Unsecured Claims shall consist of all other creditors who are not in the Subordinated Unsecured Claims Class with Allowed Claims not secured by property of the estate and that are not entitled to priority under Section 507(a) of the Bankruptcy Code. The creditors in this Class must have had a claim against the Debtor as of **November 11, 2025.** The total amount for this Class is approximately **$658,343.90,** plus any Allowed Unsecured Claim held by an undersecured creditor that is to be determined. Below is a summary of the Claims in this Class:

| Claimholder | Amount of Claim | Disputed/Undisputed |
|-------------|-----------------|---------------------|
| JP Morgan Chase Bank **POC 3** | $10,658.19 | |
| First Federal Leasing **POC 4** | $41,433.30 | |
| CH Realty III/Wexford L.P. **POC 11** | $140,517.08 | |
| Neogen Service | $13,171.58 | |
| P.Z. Southern Limited Partnership **POC 9** | $254,337.34 | |
| PNC Bank | $100,00.00 | |
| PNC Bank | $195,787.47 | |
| Capital One **POC 5** | $2,139.33 | |
| Verizon **POC 6** | $199.61 | |
| **TOTAL** | $658,343.90 | |

1)       **Treatment.** This Class is **IMPAIRED**. The Creditors in this Class will be paid by regular monthly payments made by the Debtor and distributed on a Quarterly basis. Beginning on the Plan Effective Date, the Debtor will pay the Disbursing Agent a fixed monthly payment of $250.00. Distributions to this Class will be made on a quarterly basis. Each creditor will receive a pro rata distribution of all funds distributed to the Class. This Class will not be entitled to interest on their claims. The claims in this Class are not entitled to post-petition interest, attorney's fees, or costs. In addition to regular payments, this Class may receive payments through the proceeds of sale, if any, and through litigation proceeds.

2)       **No Revival Clause.** To the extent that any of the claims in this Class are judgment liens that are stale and have not been timely revived during the statutory period prior to the commencement of this Case, the creditor shall not be entitled to revive the lien against the Debtor after the Confirmation of the Plan.

3)       **Default; Remedies.** The only Event of Default for this Class is lack of payment consistent with the Plan. All creditors in this Class must give notice to the Debtor and its counsel by written notice specifying the alleged default and the action needed to cure the default. The Debtor shall have thirty (30) days to cure any default after receipt of that notice. No creditor may enforce any right or enforce any lien until this notice and opportunity to cure has been given. All notices of default must be mailed to the Debtor at its last known address AND a copy of that notice shall be mailed to David Z. Valencik at 555 Grant Street, Suite 300, Pittsburgh, Pennsylvania 15219, with courtesy copies made to David Z. Valencik at **dvalencik@c-vlaw.com**. All notices must be sent by certified mail, return receipt requested to be effective. The terms of these notice rights must be strictly enforced as a condition precedent to the exercise of any rights under this Plan. In the event that the default is not cured within the period allowed, the creditor will be allowed to take action to enforce their rights, subject to applicable laws and procedures.

### 2.2.4. Equity Interest Holders

**INTENTIONAL OMITTED/RESERVED
DEBTOR IS AN INDIVIDUAL – NO EQUITY INTEREST HOLDERS**

## 2.3   Claims Objections

The Debtor may object to the amount or validity of any claim within forty-five (45) days following entry of the Post-Confirmation Order (unless otherwise modified or extended by Court Order) by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan.  No payment will be made to the holder of a Disputed Claim unless and until it becomes an Allowed Claim.  To the extent the Disputed Claim becomes an Allowed Claim, the Debtor will pay the Allowed Claim in accordance with the Plan.

**2.4**    **Treatment of Executory Contracts and Unexpired Leases**

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract.  The defined term "Executory Contract" as used in this Plan includes unexpired leases.

The Executory Contracts to be assumed by the Debtor and performed by the Debtor after confirmation are set forth on **Schedule 2.4(a)** attached hereto. Schedule 2.4(a) provides the name of the counterparty to the Executory Contract, a brief description of the contract, and the proposed cure amount.

The Executory Contracts to be assumed by the Debtor and assigned to a third party are set forth on **Schedule 2.4(b)** attached hereto.  Schedule 2.4(b) provides the name of the counterparty to the Executory Contract, a brief description of the contract, the name of the proposed assignee and the proposed cure amount.

If the proposed assignee is an Insider describe the relationship here:      **N/A**

Unless a Bankruptcy Court Order states otherwise, objections to the assumption of an Executory Contract, the proposed cure amount, or the adequacy of assurance of future performance, must be filed and served on or before the deadline for filing Plan objections.

All Executory Contracts not listed on Schedule 2.4(a) or 2.4(b) shall be deemed rejected upon entry of the Confirmation Order and the Debtor will no longer continue to perform its obligations under the Executory Contract.  For the convenience of creditors, the Debtor has prepared the attached **Schedule 2.4(c)** listing Executory Contracts to be rejected upon entry of the Confirmation Order.  For the avoidance of doubt, however, any Executory Contract not listed on either Schedule 2.4(a) or 2.4(b) will be conclusively deemed rejected even if not expressly shown on Schedule 2.4(c).

The deadline for filing a proof of claim arising from rejection of an Executory Contract shall be 30 days following entry earlier of: (a) the Confirmation Order; or (b) any Order of Court specifically providing for the rejection of the applicable Executory Contract. Any Claim based on the rejection of an Executory Contract that is not timely filed shall be a Disputed Claim.

**2.5**    **Means for Implementation of the Plan and Plan Funding**

**2.5.1**  Describe how the Plan will be implemented, including how the Plan will be funded.

The Plan will be implemented through two primary means – (a) the continued business operations; and (b) the sale of assets.

**2.5.2**  If the Plan proposes a sale of the Debtor's assets, describe how the sale will proceed, including anticipated marketing efforts and proposed bidding procedures.

The Plan proposes the sale of certain assets. The Debtor has received a proposal for a potential sale that the Debtor is considering. The Debtor will market the property for sale consistent with the Local Rule requirements to ensure it is properly marketed.

**2.5.3**   Describe any post-petition or exit financing the Debtor has or will obtain to fund the Plan:

At this time, the Debtor does not have any prospects on post-petition or exit financing. The Debtor is exploring all options in relation to this restructure and to the extent that financing arises, the Debtor reserves the right to explore such financing.

**2.5.4**   Describe Additional provisions, if any, for implementing the plan, including provisions necessary to comply with §1191(c)(3)(B).

The Debtor is funding this plan with its income and dedication all disposable income over a 5-year period to this Plan. Disposable income is defined by Section 1191(d) of the Bankruptcy Code as the income that is received by the debtor and that is not reasonably necessary to be expended for the payment of expenditures necessary for the continuation, preservation, or operation of the business of the debtor.

## 2.6   <u>Payments</u>

**2.6.1.    Address to Delivery Payments.** For Claims under treated by this Plan, the payments shall be made by appropriate distributing entity at the address provided for by agreement, as listed in an unmodified contract, or as listed in the Proof of Claim. The Disbursing Agent and/or Debtor reserve the right to verify the address for all payments made to creditors at any time.

**2.6.2.    Payment to Administrative Claimants, Priority Tax Claims, and Secured Creditors.** Unless otherwise agreed to by the Debtor and the respective claim holder, for all Administrative Claimants, Priority Tax Claims, and all Secured Creditors, the Debtor shall make the payments directly to the Creditor. This payment shall be made on a monthly basis, or at such other intervals as the Debtor and the claimholders agree.

**2.6.3.    Payment to Unsecured Creditors**. For Unsecured Creditors, the Debtor shall make payments to the Disbursing Agent. The Debtor shall deliver all necessary funds for disbursements to the Disbursing Agent in accordance with the Plan.

**2.6.4.    Distributions to Creditors.** All payments to Administrative Claimants, Priority Tax Claims, and Secured Claims shall be paid **<u>MONTHLY</u>** on or before the last day of the month unless otherwise agreed by the Parties, to the extent any payments are contemplated. All payments to Unsecured Creditors shall be paid

by the Disbursing Agent on a **QUARTERLY** basis on or before the last day of the month succeeding the end of the quarter.

    **2.6.5.    Property of the Creditors.** Once a payment is made to the Disbursing Agent, it is no longer the property of the Debtor or the Reorganized Debtor; the payment shall become property of the Creditors.

    **2.6.6.    Unclaimed Funds.** Payments made pursuant to the Plan that are unclaimed after six (6) months shall be treated as unclaimed funds and shall include checks and funds represented by the checks which have been returned as undeliverable without a proper forwarding address. Provided that the Plan distribution was sent to the claimant's last known address on the claims register, unclaimed funds shall constitute an abandonment of the claim and become the property of the Debtor or the entity acquiring the assets of the Debtor under the Plan (as applicable

## 2.7    Termination of Trustee Services

    The services of the Trustee shall terminate when the Plan has been substantially consummated (within the meaning of, and except as otherwise provided in §1183(c)(1)). The Debtor believes and projects that substantial consummation of the Plan will occur on the **FIRST DISTRIBUTION TO HOLDERS OF GENERAL UNSECURED CLAIMS**. Not later than 14 days after substantial consummation, the Debtor will file and serve, in accordance with §1183(c)(2), a notice that the Plan is substantially consummated.

## 2.8    Post-Confirmation Management

    The Debtor's management immediately prior to the Effective Date shall serve as the Debtor's management on and after the Effective Date.  Upon entry of the Confirmation Order, officers of the Debtor, and their compensation, shall be as follows:

| NAME | POSITION | COMPENSATION |
|---|---|---|
| Michael Racskowski | Chiropractor | $2,500.00/mo. (approx.) |

## 2.9    Tax Consequences of the Plan

    *THE DEBTOR MAKES NO REPRESENTATION REGARDING THE TAX CONSEQUENCES OF THE PLAN TO ANY CREDITOR OR EQUITY INTEREST HOLDER. CREDITORS AND EQUITY INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS.*

## ARTICLE 3
## FEASIBILITY OF PLAN

### 3.1   Ability to Initially Fund Plan

The Debtor's financial projections demonstrate sufficient cash on hand to satisfy obligations due on the Effective Date of the Plan, including payment of the Allowed Administrative Claims, U.S. Trustee Fees, and cure amounts, in accordance with the Bankruptcy Code or as otherwise agreed.  *See* Schedule 3.1 attached hereto.

### 3.2   Ability to Make Future Plan Payments and Operate Without Further Reorganization

Pursuant to §1190(2) of the Bankruptcy Code, the Debtor shall submit all or such portion of future income as is necessary for the confirmation of the Plan and to satisfy the Debtor's obligations under Article 2 of the Plan.

Attached hereto as **Schedule 3.2**, are the Debtor's financial projections demonstrating the Debtor's ability to make all future Plan payments in the aggregate amount of **$3,093.48** during the Plan term (the "Plan Funding"). Plan Funding is in an amount equal to the Debtor's disposable income as defined in §1191(d) of the Bankruptcy Code.

Summarize the numerical projections, and highlight/explain why any assumptions not in accord with past experience should now be made:

The projections provide for income and expenses consistent with historical trends. The Plan provides for a reduction of debt obligations which will help with plan feasibility.

The final Plan payment is expected to be paid on **May 2031**, assuming the Plan is confirmed in September 2025 and the Plan Effective Date occurs 60 days thereafter.

**You Should Consult with Your Accountant or other Financial Advisor
If You Have Any Questions Pertaining to the Debtor's Financial Projections.**

## ARTICLE 4
## LIQUIDATION ANALYSIS

### 4.1   Comparison of Plan with Chapter 7 Liquidation

In order to confirm the Plan, the Bankruptcy Court must find that holders of Allowed Claims and Equity Interests who do not accept the Plan will receive at least as much under the Plan as such holders would receive in a Chapter 7 liquidation of the Debtor's assets (the "Liquidation Test").

If the Debtor's proposed Plan is not confirmed, the potential alternatives would include dismissal of the case or conversion of the case to Chapter 7.  If this case is converted to Chapter 7, a Chapter 7 Trustee will be appointed to liquidate all the Debtor's

non-exempt assets.  In this event, all Secured Claims (to the value of the collateral) all Priority Unsecured Claims and all Administrative Claims (both Chapter 7 and Chapter 11) must be paid in full before any distribution is made to holders of General Unsecured Claims.

**4.2**    **Liquidation Analysis**

Based upon the liquidation value of the Debtor's assets in Plan Section 1.4 and the amount of claims set forth in Plan Section 1.5, the Debtor's Plan **PASSES** the Liquidation Test.

| | |
|---|---|
| Value of Estate's Interests in Assets | $_____0.00 |
| **MINUS** | |
| Estimated Ch. 7 Expenses | |
| (calc. at 8% of the Total Value All Assets) | $_____15,462.43 |
| Amount of Administrative Claims | $_____35,000.00 |
| Amount of Priority Tax Claims | $_____0.00 |
| Amount of Priority Unsecured Claims | $_____0.00 |
| | |
| **TOTAL Available for General Unsecured** | |
| **Claims in a Chapter 7 Liquidation** | $_____**0.00** |
| | |
| General Unsecured Claims Amount | $_____658,343.90 |
| | |
| **PLUS** | |
| | |
| Undersecured portion of Secured Claims | |
| Added to General Unsecured Claims due to | |
| Liquidation | $_____0.00 |
| | |
| **TOTAL Amount of General** | |
| **Unsecured Claims in a Chapter 7 Liquidation** | $_____**658,343.90** |
| | |
| **Percentage Distribution to Holders of** | |
| **General Unsecured Claims in a Chapter 7** | |
| **Liquidation** | **0.00%** |

**REASONING:**      The Plan passes the Liquidation Alternative Test because creditors would fair better under the Plan than in a chapter 7. In a hypothetical chapter 7, general unsecured creditors would not receive a distribution on account of the claims. The Plan proposes a minimum 2.27% recovery on account of claims while paying all Secured and Priority Claims in full over time.

**ARTICLE 5**
**DISCHARGE**

**5.1**    **Discharge.** If the Plan is confirmed under § 1191(a), On the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before

confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d) of the Bankruptcy Code;

OR, alternatively:

If the Plan is confirmed under § 1191(b), as soon as practicable after completion by the Debtor of all payments due under the Plan, unless the Court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the court shall grant the Debtor a discharge of all debts provided in §1141(d)(1)(A) of this title, and all other debts allowed under §503 of this title and provided for in this Plan, except any debt—

(1) on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or

(2) if applicable, of the kind specified in §523(a) of this title.

## ARTICLE 6
## GENERAL PROVISIONS

### 6.1    Title to Assets

If the Plan is confirmed under §1191(a), except as otherwise provided in the Plan or in the Confirmation Order, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after Plan Confirmation, the property dealt with by the Plan is free and clear of all Claims and Equity Interests.

### 6.2    Binding Effect

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

### 6.3    Severability

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 6.4    Retention of Jurisdiction by the Bankruptcy Court

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under §1193; (iii) to hear and allow all applications for compensation to professionals and other Administrative

Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases; (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action; and (vi) to direct the Debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by the confirmed Plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the Plan.

## 6.5    Captions

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

## 6.6    Modification of Plan

The Debtor may modify the Plan at any time before confirmation of the Plan pursuant to §1193(a). However, the Bankruptcy Court may require additional items including re-voting on the Plan.

If the Plan is confirmed under §1191(a), the Debtor may also seek to modify the Plan at any time after Confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under §1191(b), the Debtor may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years, as fixed by the court *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

## 6.7    Final Decree

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

## ARTICLE 7
## DEFINITIONS

The definitions and rules of construction set forth in §§101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan.  Where applicable, the definitions that follow that are found in the Bankruptcy Code are for convenience of reference only, and are superseded by the definitions found in the Bankruptcy Code.

**7.1**   **Administrative Claim:** Any cost or expense of administration of the Chapter 11 Case entitled to priority under §507(a)(2) of the Bankruptcy Code and allowed under §503(b) of the Bankruptcy Code.

**7.2**   **Allowed:** With respect to a Claim or Equity Interest means any claim against or equity interest in the Debtor pursuant to §502 of the Bankruptcy Code to the extent that: (a) the Debtor schedules such Claim as an undisputed, non-contingent and liquidated Claim, or (b) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court, and, as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

**7.3**   **Avoidance Actions**: All causes of actions, suits, choses in action, and claims of the Debtor and/or the Debtor's estate against any entity or person seeking to avoid a transfer of property, recovery of property and subordination or other actions or remedies that may be brought on behalf of the Debtor or the Debtor's estate under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code.

**7.4**   **Bankruptcy Code:** The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**7.5**   **Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure.

**7.6**   **Cash**: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**7.7**   **Chapter 11 Case**: This case under Chapter 11 of the Bankruptcy Code in which Michael Raczkowski is the Debtor-in-Possession.

**7.8**   **Claim**: Any claim as defined in §101(5) of the Bankruptcy Code.

**7.9**   **Class**: A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

**7.10**   **Confirmation**: The entry by the Bankruptcy Court of an order confirming this Plan.

**7.11**   **Confirmation Date**: The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

**7.12**   **Confirmation Order**: An order of the Bankruptcy Court or any amendment thereto

confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

**7.13**    **Creditor**: Any person who has a Claim against the Debtor that arose on or before the Petition Date.

**7.14**    **Debtor**: Michael Raczkowski, the debtor-in-possession in this Chapter 11 Case.

**7.15**    **Disputed Claim:** Any claim against the Debtor pursuant to §502 of the Bankruptcy Code that the Debtor or any party in interest has in any way objected to, challenged or otherwise disputed.

**7.16**    **Effective Date**: The date on which the Plan is substantially consummated as defined by Section 1101(2) of the Bankruptcy Code. It is anticipated that the Plan will be substantially consummated ninety (90) days after the Confirmation Order becomes a final order.

**7.17**    **Equity Interest**: An ownership interest in the Debtor.

**7.18**    **Executory Contracts**: All unexpired leases and executory contracts as described in §365 of the Bankruptcy Code.

**7.19**    **Final Order**: An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**7.20**    **General Unsecured Claim**: Any Claim in the Chapter 11 case which is not a Secured Claim, Priority Tax Claim, or Priority Unsecured Claim.

**7.21**    **Insider:** The relationship between the Debtor and other persons defined at §101(31) of the Bankruptcy Code.

**7.22**    **Petition Date**: September 2, 2025, the date the Chapter 11 petition for relief was filed.

**7.23**    **Plan**: This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

**7.24**    **Post-Confirmation Order**:  The Post-Confirmation Order and Notice of Deadlines entered by the Bankruptcy Court following Plan Confirmation providing, among other things, the deadlines by which certain post-Confirmation actions must be taken.

**7.25**    **Priority Unsecured Claim**: Any Claim entitled to priority in payment under §507(a)(1), (4), (5), (6), and (7) of the Bankruptcy Code.

**7.26**    **Priority Tax Claim**: Any Claim entitled to priority in payment under §507(a)(8) of

the Bankruptcy Code.

7.27 **Schedules**: Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

7.28 **Secured Claim:** A Claim that is secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under §506 of the Bankruptcy Code.

7.29 **Trustee**: Crystal Thornton-Illar, the trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b), the Plan, or the order confirming the Plan.

7.30 **Value of the Estate's Interest in Assets**: As to any asset of the Debtor, the value of the estate's interest in an asset is calculated by subtracting from the Liquidation Value listed for the asset in Plan Section 1.4: (a) the amount of the Allowed Secured Claims having a security interest in the asset; and (b) the amount of any claimed exemption applicable to the asset. The Value of the Estate's Interest is calculated for purposes of the Liquidation Test in Article 4 of this Plan, only, and for no other purpose.

**Respectfully submitted,**

**DATE:** December 1, 2025         **CALAIARO VALENCIK**

                                   **BY:** /s/ David Z. Valencik
                                   **David Z. Valencik, Esq.    PA ID No. 308361**

                                   **555 Grant Street, Suite 300**
                                   **Pittsburgh, PA  15219**
                                   **Phone:       (412) 232-0930**
                                   **Fax:          (412) 232-3858**
                                   **Email:       dvalencik@c-vlaw.com**

## ARTICLE 8
## EXHIBITS, SCHEDULES, AND CHARTS

The following checked documents either accompany the Plan or are included within the Plan:

| | | |
|---|---|---|
| [X] | Debtor's Assets at Fair Market Value | Article 1, Section 1.4 |
| [X] | Debtor's Liabilities, listed by Class | Article 1, Section 1.5; *see also* Article 2, Sections 2.1 and 2.2 |
| [X] | Executory Contracts and Unexpired Leases to be Assumed | Schedule 2.4(a) |
| [X] | Executory Contracts and Unexpired Leases to be Assumed and Assigned | Schedule 2.4(b) |
| [X] | Executory Contracts and Unexpired Leases to be Rejected | Schedule 2.4(c) |
| [X] | Sources and Uses of Cash to Fund the Plan | Article 3.1 and Schedule 3.1 |
| [X] | Financial forecast for the Debtor | Article 3.2 and Schedule 3.2 |
| [X] | Liquidation Analysis | Article 4 |

**SCHEDULE 2.4(a)**

**Executory Contracts and Unexpired Leases to be Assumed.**

**NONE**

**SCHEDULE 2.4(b)**

**Executory Contracts and Unexpired Leases to be Assumed and Assigned**

**NONE**

## SCHEDULE 2.4(c)

**Executory Contracts and Unexpired Leases to be Rejected.**

**NONE**

## SCHEDULE 3.1

### Sources and Uses of Cash to Fund the Plan

The sources and Uses of the Cash the Debtor will have on hand by the Effective Date are estimated as follows:

| | |
|---|---|
| Current Bank Account Balance: | $_____1,745.04 |
| **Plus** | |
| Additional Cash Debtor anticipates will accumulate from net earnings between now and Effective Date (Estimated)[1] | $_____2,000.00 |
| Borrowing[2] | $_____0.00 |
| Capital Contributions | $_____0.00 |
| Other (explain): | $_____0.00 |
| **Cash on hand on the Effective Date:** | **$_____2,745.04** |
| **Less** | |
| Administrative Claims paid on Effective Date | $_____1,500.00 |
| Statutory costs and charges, including U.S. Trustee Fees | $_____0.00 |
| Cure Amounts | $_____80.71 |
| Other Payments Due on the Effective Date[3] | $_____435.69 |
| **Balance after paying these amounts** | **$_____728.64** |

---

[1]       The basis for these projections is set forth in Article 3 of the Plan and Schedule 3.2.
[2]       The Plan does not anticipate any borrowing.
[3]       Amount represents projected Plan payment less payment to Administrative Claims and monthly mortgage arrears cure. Vehicle payment (Class 2) is to be paid by business.

## Schedule 3.2

## Financial Forecast for the Debtor

**I.    PLAN PAYMENT (Broken Down by Class and/or Creditor)**

| Class/Type of Claim | Name of Creditor | Proj. Mo. Payment |
|---|---|---|
| Administrative Claim | Calaiaro Valencik | $500.00 |
| Administrative Claim | Subchapter V Trustee | $1,000.00 |
| Class 1 | PNC Bank[4] | $80.71 |
| Class 2 | AmeriCredit Financial Services, Inc. dba GM Financial[5] | $1,027.08 |
| Class 3 | Truist Bank[6] | $0.00 |
| Class 4 | Synchrony Bank | $235.69 |
| Class 5 | General Unsecured Claims | $250.00 |
| | **TOTAL** | $3,093.48 |

---

[4]    Amount represent payment for arrears.
[5]    Payment to be made by business.
[6]    Plan proposes sale of collateral.